OPINION
{¶ 1} This is an appeal from a division of marital property, attribution of income in establishing child support, denial of spousal support and inadequate opportunity to make ordered payment, all as decided by the Court of Common Pleas, Domestic Relations Division of Stark County.
 STATEMENT OF THE FACTS AND CASE {¶ 2} The parties to this appeal were married on July 6, 1996, with two children being the issue thereof, Taylor (D.O.B. 12/18/97) and Maxwell (D.O.B. 10/26/99).
 {¶ 3} Appellee is both an engineer and a lawyer and is the manager of Pipeline Integrity with East Ohio Gas Company.
 {¶ 4} Appellant owns Critchfield Custom Homes, Inc. and Critchfield Company, Inc. The former constructs new homes while the latter is a holding company as to rental properties.
 {¶ 5} Appellant's father, Robert Critchfield, a retired banker, handled the bookkeeping, issuance of corporate checks and provided financing.
 {¶ 6} The action for divorce was filed in November, 2002, with the final Entry bearing the date of June 11, 2004.
 {¶ 7} Appellant raises six Assignments of Error, each based upon abuse of discretion.
 {¶ 8} Such Assignments are:
 ASSIGNMENTS OF ERROR {¶ 9} "I. The lower court abused its discretion in dividing marital property, by failing to take $238,966 in credit line debt into consideration when valuing Critchfield Co.
 {¶ 10} "II. The lower court abused its discretion in dividing marital property, by valuing the marital residence without taking a $112,000 loan made by appellant's father into consideration.
 {¶ 11} "III. The lower court abused its discretion in dividing marital property, by crediting appellee with the entire $55,565 proceeds from the sale of her premarital condominium, when only $40,000 was traceable as her separate property.
 {¶ 12} "IV. The lower court abused its discretion in attributing to appellant $50,000+ in income beyond his annual salary, for purposes of calculating child support.
 {¶ 13} "V. The lower court abused its discretion in denying the husband spousal support.
 {¶ 14} "VI. The lower court abused its discretion by granting appellant only 90 days to pay appellee $67,258."
 I. {¶ 15} In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217. We must look at the totality of the circumstances in the case sub judice and determine whether the trial court acted unreasonably, arbitrarily or unconscionably.
 {¶ 16} The standards applicable to Assignments of Error I, II, and III are stated in R.C. 3105.171 (A)(3)(a), (3)(a)(i), (3)(a)(ii), (3)(b), (5), (6)(a), (6)(ii), (6)(vii), (6)(b), (B), (C)(1)(2) and (3), (D), (E)(1) and (2), (F)(1) through (7), (F)(9), (G), and (J)(1)(2) as stated: {¶ 17} "(3)(a) "Marital property" means, subject to division (A)(3)(b) of this section, all of the following:
 {¶ 18} "(i) All real and personal property that currently is owned by either or both of the spouses, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage;
 {¶ 19} "(ii) All interest that either or both of the spouses currently has in any real or personal property, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage;
 {¶ 20} "(b) "Marital property" does not include any separate property.
 {¶ 21} "(5) "Personal property" includes both tangible and intangible personal property.
 {¶ 22} "(6)(a) "Separate property" means all real and personal property and any interest in real or personal property that is found by the court to be any of the following:
 {¶ 23} "(ii) Any real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage;
 {¶ 24} "(vii) Any gift of any real or personal property or of an interest in real or personal property that is made after the date of the marriage and that is proven by clear and convincing evidence to have been given to only one spouse.
 {¶ 25} "(b) The commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property, except when the separate property is not traceable.
 {¶ 26} "(B) In divorce proceedings, the court shall, and in legal separation proceedings upon the request of either spouse, the court may, determine what constitutes marital property and what constitutes separate property. In either case, upon making such a determination, the court shall divide the marital and separate property equitably between the spouses, in accordance with this section. For purposes of this section, the court has jurisdiction over all property in which one or both spouses have an interest.
 {¶ 27} "(C)(1) Except as provided in this division or division (E) of this section, the division of marital property shall be equal. If an equal division of marital property would be inequitable, the court shall not divide the marital property equally but instead shall divide it between the spouses in the manner the court determines equitable. In making a division of marital property, the court shall consider all relevant factors, including those set forth in division (F) of this section.
 {¶ 28} "(2) Each spouse shall be considered to have contributed equally to the production and acquisition of marital property.
 {¶ 29} "(3) The court shall provide for an equitable division of marital property under this section prior to making any award of spousal support to either spouse under section 3105.18 of the Revised Code and without regard to any spousal support so awarded.
 {¶ 30} "(D) Except as otherwise provided in division (E) of this section or by another provision of this section, the court shall disburse a spouse's separate property to that spouse. If a court does not disburse a spouse's separate property to that spouse, the court shall make written findings of fact that explain the factors that it considered in making its determination that the spouse's separate property should not be disbursed to that spouse.
 {¶ 31} "(E)(1) The court may make a distributive award to facilitate, effectuate, or supplement a division of marital property. The court may require any distributive award to be secured by a lien on the payor's specific marital property or separate property.
 {¶ 32} "(2) The court may make a distributive award in lieu of a division of marital property in order to achieve equity between the spouses, if the court determines that a division of the marital property in kind or in money would be impractical or burdensome.
 {¶ 33} "(F) In making a division of marital property and in determining whether to make and the amount of any distributive award under this section, the court shall consider all of the following factors:
 {¶ 34} "(1) The duration of the marriage;
 {¶ 35} "(2) The assets and liabilities of the spouses;
 {¶ 36} "(3) The desirability of awarding the family home, or the right to reside in the family home for reasonable periods of time, to the spouse with custody of the children of the marriage;
 {¶ 37} "(4) The liquidity of the property to be distributed;
 {¶ 38} "(5) The economic desirability of retaining intact an asset or an interest in an asset;
 {¶ 39} "(6) The tax consequences of the property division upon the respective awards to be made to each spouse;
 {¶ 40} "(7) The costs of sale, if it is necessary that an asset be sold to effectuate an equitable distribution of property;
 {¶ 41} "(9) Any other factor that the court expressly finds to be relevant and equitable.
 {¶ 42} "(G) In any order for the division or disbursement of property or a distributive award made pursuant to this section, the court shall make written findings of fact that support the determination that the marital property has been equitably divided and shall specify the dates it used in determining the meaning of "during the marriage.
 {¶ 43} "(J) The court may issue any orders under this section that it determines equitable, including, but not limited to, either of the following types of orders:
 {¶ 44} "(1) An order granting a spouse the right to use the marital dwelling or any other marital property or separate property for any reasonable period of time;
 {¶ 45} "(2) An order requiring the sale or encumbrancing of any real or personal property, with the proceeds from the sale and the funds from any loan secured by the encumbrance to be applied as determined by the court."
 {¶ 46} The First Assignment asserts that the court did not consider the credit line debt to Appellant's father in the valuation of Critchfield Company. We disagree.
 {¶ 47} As to such valuation, the court, after reviewing the procedures of the loans from Appellant's father found:
 {¶ 48} "Each party submitted expert opinion as to the fair market valuation of Crithfield Company as well as Critchfield Custom Homes. The Court finds that the fair market valuation of Critchfield Company as prepared by Jeffrey T. Pelot to be more a credible valuation. The Court finds that the value of Critchfield Custom Homes as of July 6, 1996, (the pre-marital interest) was $127,800. The value of Critchfield Company as of September 30, 2003 was $419,000.00. Thus, the marital value of Critchfield Company is found to be $291,200.
 {¶ 49} "The Court finds that the line of credit between the husband and his father is an obligation due solely to Critchfield Custom Homes. Robert Critchfield, however, acted in good faith with his son in negotiating this line of credit and the line of credit benefited Critchfield Company. Accordingly, the Court does not find financial misconduct as a result of the real estate transfers made to assist Robert Critchfield in securing these liabilities."
 {¶ 50} The trier of fact has the principle responsibility for determining the credibility of the witnesses and the relative weight attributable to their testimony. State v. Jamison (1990),40 Ohio St.3d 182, certiorari denied (1990), 498 U.S. 881.
 {¶ 51} This standard applies both to fact witnesses as well as expert witnesses.
 {¶ 52} In Volume III of the transcript, Jeffrey Pelot testified on Pages 246 and 247:
 {¶ 53} "And what is your opinion as to the value of Critchfield Custom Homes, Inc., on September 30, 2003?
 {¶ 54} "Zero.
 {¶ 55} "In your evaluation of Critchfield Custom Homes, Inc., did you include the line of credit on that corporation?
 {¶ 56} "Yes.
 {¶ 57} "Why did you include that in your evaluation of Critchfield Custom Homes, Inc.?
 {¶ 58} "Two reasons, primarily in tying out the liabilities of the company, as, you know, those two particular dates, that number fit in with the rest of the debt that was owed by the corporation. More importantly in examining, you know, the supporting documentation of the monies that were advanced from approximately April of 1998, through the present, all the checks, you know, were made payable to, you know, Critchfield Custom Homes."
 {¶ 59} Also, on cross-examination at Pages 256, et seq, Mr. Pelot went into further detail as to his methods of evaluation of such corporation, including the line of credit debt.
 {¶ 60} We find no abuse of discretion and therefore reject the First Assignment of Error.
 II. {¶ 61} The Second Assignment of Error asserts abuse of discretion in the valuation placed on the residence of the parties.
 {¶ 62} The court made the following determination as to such residence:
 {¶ 63} "The parties own real estate located at 8084 Grayson Green Circle, N.W., Massillon, Ohio valued at $435,000. The balance on the first mortgage at Charter One Bank is $188,177 and the balance on the Charter One Equality loan is $89,801. The marital equity in this property is $93,637".[1]
 {¶ 64} The Court then followed with a consideration of the construction status, tax and first mortgage indebtedness.
 {¶ 65} The Court then reviewed the loan from Appellant's father as to the increase of $112,000.00 to the credit line for the residence construction:
 {¶ 66} "During the construction of the parties' Grayson Green residence, they found themselves running short of funds to complete the property. Robert Critchfield agreed with the parties to loan the money necessary to complete the residence. Robert Critchfield loaned the money to Critchfield Custom Homes by an increase to the company's credit line. Of the personal credit line, $112,000 is due to these loans for the construction of the marital residence."
 {¶ 67} The Court then reviewed the fact that the credit line of $400,000.00 was reduced to under $250,000.00 by the transfer of six properties of Critchfield Company.
 {¶ 68} Appellant, by this Assignment, asserts that he should be entitled to a debt charge against the residence even though the loan was to such corporation and the property transferred reduced the credit line. This would, in effect be a double credit.
 {¶ 69} We reject this Assignment and find no abuse of discretion.
 III. {¶ 70} As to the Third Assignment, the testimony of Appellee (Tr. Vol. III, pages 365-366) was to the effect that the equity in her condominium, found by the court to be $55,565.00 was used to reduce the indebtedness on her Buick Riviera which Appellant traded on a Durango and also to pay toward the purchase of the residence lot. In addition, her bonds of $8,000.00 and property received from her parents were utilized to complete payment of the residence lot.
 {¶ 71} It is clear that the court considered this testimony in arriving at an equalization award of $239,134.00 to each of the parties.
 {¶ 72} We find no abuse of discretion and overrule the Third Assignment of Error.
 IV. {¶ 73} The Fourth Assignment concerns attribution of income as to child support determination.
 {¶ 74} The court's findings in this regard are stated at page 2 of the Final Entry:
 {¶ 75} "The annual income of the husband is found to be $74,259. This amount includes a base salary of $10,740, the average gain reported from the sale of properties on the 2001 and 2002 income tax returns in the amount of $50,713, undeposited funds acknowledged by the husband in the amount of $5,750, $5,256 representing mortgage payments paid by the corporation for the 115 Oakwood property and $1,800 representing a portion of his cell phone and gasoline usage for personal benefit."
 {¶ 76} It is quite clear that the base salary of Appellant of $10,740.00 does not represent his actual income. Also, as the corporations were Subchapter S corporations, the court was correct in considering the transactions thereof in attributing income.
 {¶ 77} We find no abuse of discretion in averaging the property gains, undeposited funds, mortgage and other personal expenses paid on his behalf by his corporation. The court clearly considered the testimony and exhibits in an attempt to arrive at a figure approximating the actual annual income of Appellant.
 {¶ 78} Therefore, the child support order premised on the attributed income as stated and Appellee's specific income in the following order is within the court's discretion:
 {¶ 79} "Pursuant to the child support schedules and worksheet the annual amount of reasonable and necessary child support for two children is $21,971. The husband's obligation is $8,876, or 40%, and the wife's obligation is $13,095, or 60%. (See attached worksheet). O.R.C. §3109.05(A)(1), § 3113.21 to § 3113.219.
 {¶ 80} "Effective July 1, 2004, the husband, the Obligor, shall pay to the wife, the Obligee, the sum of $581.73, per month, (plus 2% processing fee) for the support of the parties' children."
 {¶ 81} The Fourth Assignment is rejected.
 V. {¶ 82} The lack of spousal support objected to as erroneous in Assignment of Error V requires an examination under R.C. 3105.18.
 {¶ 83} Subsections (B), (C), (1)(a), (b), (c), (d), (e), (g), (h), (i), (l), (n), (2) provide:
 {¶ 84} "(B) In divorce and legal separation proceedings, upon the request of either party and after the court determines the division or disbursement of property under section 3105.171 of the Revised Code, the court of common pleas may award reasonable spousal support to either party. During the pendency of any divorce, or legal separation proceeding, the court may award reasonable temporary spousal support to either party.
 {¶ 85} "An award of spousal support may be allowed in real or personal property, or both, or by decreeing a sum of money, payable either in gross or by installments, from future income or otherwise, as the court considers equitable.
 {¶ 86} "Any award of spousal support made under this section shall terminate upon the death of either party, unless the order containing the award expressly provides otherwise.
 {¶ 87} "(C)(1) In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:
 {¶ 88} "(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;
 {¶ 89} "(b) The relative earning abilities of the parties;
 {¶ 90} "(c) The ages and the physical, mental, and emotional conditions of the parties;
 {¶ 91} "(d) The retirement benefits of the parties;
 {¶ 92} "(e) The duration of the marriage;
 {¶ 93} * * * *
 {¶ 94} "(g) The standard of living of the parties established during the marriage;
 {¶ 95} "(h) The relative extent of education of the parties;
 {¶ 96} "(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;
 {¶ 97} * * * *
 {¶ 98} "(l) The tax consequences, for each party, of an award of spousal support;
 {¶ 99} * * * *
 {¶ 100} "(n) Any other factor that the court expressly finds to be relevant and equitable.
 {¶ 101} "(2) In determining whether spousal support is reasonable and in determining the amount and terms of payment of spousal support, each party shall be considered to have contributed equally to the production of marital income."
 {¶ 102} We do not consider a waiver by Appellant occurred merely because he asked for spousal support (Tr. V. p. 558) without further presentation as the court was sufficiently apprised of the need to consider the factors of R.C. 3105.18.
 {¶ 103} The opinion indicates that the court did consider such statutory requirements (Opinion p. 12).
 {¶ 104} Therefore, no abuse of discretion occurred and Assignment V is rejected.
 VI. {¶ 105} In Assignment VI the Appellant asserts a further abuse of discretion as to payment of the asset equalization amount of $67,258.00 within 90 days.
 {¶ 106} The applicable statutory provisions, as cited by the respective parties are R.C. 3105.171(A)(1) and (F)(4):
 {¶ 107} "(A) As used in this section:
 {¶ 108} "(1) `Distributive award' means any payment or payments, in real or personal property, that are payable in a lump sum or over time, in fixed amounts, that are made from separate property or income, and that are not made from marital property and do not constitute payments of spousal support, as defined in section 3105.18 of the Revised Code."
 {¶ 109} Section (F)(4) states:
 {¶ 110} "In making a division of marital property and in determining whether to make and the amount of any distributive award under this section, the court shall consider all of the following factors:
 {¶ 111} "(4) The liquidity of the property to be distributed."
 {¶ 112} We should note at the outset that Appellant's direction toDeLevie v. DeLevie (1993), 86 Ohio App.3d 531 is misplaced. In fact, it somewhat presents the reverse argument. In that case, a question of substantial liquidity was also present but the court permitted payment of such Appellant's equity share in the residence over five years and Appellant wished to receive it earlier.
 {¶ 113} Such court stated:
 {¶ 114} "We also reject appellant's argument that the trial court abused its discretion in awarding appellee the marital residence with five years to pay off appellant's interest in the home. Pursuant to R.C.3105.171(F)(3), the court was entitled to consider, when making the award, that appellee would have custody of the child. In addition, given the costs to appellee of litigating the divorce, the fact that appellee was assuming the mortgage and other costs associated with ownership of the home * * * *"
 {¶ 115} Here, Appellant desires the reverse of such opinion in that he desires longer, rather than a shorter time to pay.
 {¶ 116} The court did not have before it the same issue and that Court's holding as to the five years did not present the same abuse of discretion argument.
 {¶ 117} We find that the court acted within its discretion in ordering the equalization sum to be paid within 90 days. Here, as in DeLevie,
supra, Appellee bore the obligation to save Appellant harmless from the residence debt obligation and, of course, is to be the primary caregiver to the children.
 {¶ 118} While Appellant may have some difficulty within the 90 days to liquefy assets, we find no abuse of discretion, which is a very high standard in the order.
 {¶ 119} This cause is affirmed at Appellant's costs.
Boggins, P.J., Farmer, J. and Hoffman, J. concur
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the Stark County Court of Common Pleas is affirmed. Costs assessed to appellant.
[1] "Calculated equity is less the wife's separate property contribution of $55,565 from the sale of her condo and less $8,000 in pre-marital bonds."